SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Patricia Atalese v. U.S. Legal Servs. Grp., L.P.** (A-64-12) (072314)

**Argued April 9, 2014 -- Decided September 23, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers the enforceability of an arbitration agreement that did not provide notice to the consumer that, by signing the agreement, she was giving up her right to seek relief in a judicial forum.

Plaintiff, Patricia Atalese, entered into a service contract with defendant, U.S. Legal Services Group, L.P. (USLSG), for debt-adjustment services.  The contract contained an arbitration provision for the resolution of any dispute between the parties.  Plaintiff brought a lawsuit against USLSG in the Special Civil Part alleging violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18.  USLSG moved to compel arbitration based on the arbitration provision in the service contract.

The trial court granted USLSG's motion to compel arbitration and dismissed the complaint without prejudice.  The court found the arbitration clause to be "minimally, barely . . . sufficient to put the [plaintiff] on notice that if [the parties] have any sort of dispute arising out of [the] agreement, it's going to be heard in [a]rbitration."  The court also believed that the arbitration clause met the criteria outlined in Curtis v. Cellco Partnership, 413 N.J. Super. 26, 33-37 (App. Div.), certif. denied, 203 N.J. 94 (2010), which held that an arbitration provision will be enforced so long as it is "sufficiently clear, unambiguously worded, satisfactorily distinguished from the other [a]greement terms, and . . . provide[s] a consumer with reasonable notice of the requirement to arbitrate."  Relying on language in Curtis, the Appellate Division affirmed, finding that "the lack of express reference to a waiver of the right to sue in court or to arbitration as the 'exclusive' remedy" did not bar enforcement of the arbitration clause.  The panel concluded that the arbitration clause gave the "parties reasonable notice of the requirement to arbitrate all claims under the contract," and that "a reasonable person, by signing the agreement, [would have understood] that arbitration is the sole means of resolving contractual disputes."  The Court granted plaintiff's petition for certification. 214 N.J. 117 (2013).

**HELD**: An arbitration provision -- like any comparable contractual provision that provides for the surrendering of a constitutional or statutory right -- must clearly and unambiguously notify the consumer that he or she is waiving the right to seek relief in a court of law.  The arbitration agreement in this case is unenforceable because it failed to notify plaintiff that, by entering into the agreement, she was surrendering her right to seek relief in a judicial forum.

1. The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate policies favoring arbitration.  Arbitration's favored status, however, does not mean that every arbitration clause will be enforceable.  The FAA requires courts to "place arbitration agreements on an equal footing with other contracts" and permits arbitration agreements "to be invalidated by 'generally applicable contract defenses.'"  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745-46 (2011) (citations omitted) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).  Accordingly, the FAA "permits states to regulate . . . arbitration agreements under general contract principles," and a court may invalidate an arbitration clause "'upon such grounds as exist at law or in equity for the revocation of any contract.'"  Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002) (quoting 9 U.S.C.A. § 2).  (pp. 8-11)

2. An agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law."  NAACP of Camden Cnty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div.), certif. granted, 209 N.J. 96 (2011), and appeal dismissed, 213 N.J. 47 (2013).  Mutual assent requires that the parties have an understanding of the terms to which they have agreed.  "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights."  Knorr v. Smeal, 178 N.J. 169, 177

(2003) (citing W. Jersey Title & Guar. Co. v. Indus. Trust Co., 27 N.J. 144, 153 (1958)). A waiver of rights -- whether in an arbitration or other clause -- "must be clearly and unmistakably established." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001) (citation and internal quotation marks omitted). "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." Foulke, 421 N.J. Super. at 425. But an average member of the public may not know -- without some explanatory comment -- that arbitration is a substitute for the right to have one's claim adjudicated in a court of law. Therefore, an arbitration agreement must make clear to parties "that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Garfinkel, 168 N.J. at 132. (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). (pp. 11-15)

3. No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights. Arbitration clauses -- and other contractual clauses -- will pass muster when phrased in plain language that is understandable to the reasonable consumer. Our courts have upheld arbitration clauses phrased in various ways when those clauses have explained that arbitration is a waiver of the right to bring suit in a judicial forum. For example, in Martindale, this Court upheld an arbitration clause because it explained that the plaintiff agreed "to waive [her] right to a jury trial" and that "all disputes relating to [her] employment . . . shall be decided by an arbitrator." 173 N.J. at 81-82, 96. In Griffin v. Burlington Volkswagen, Inc., the Appellate Division upheld an arbitration clause that stated, "[b]y agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes." 411 N.J. Super. 515, 518 (App. Div. 2010). In Curtis, the Appellate Division upheld an arbitration agreement that provided: "Instead of suing in court, we each agree to settle disputes (except certain small claims) only by arbitration. The rules in arbitration are different. There's no judge or jury, and review is limited, but an arbitrator can award the same damages and relief, and must honor the same limitations stated in the agreement as a court would." 413 N.J. Super. at 31 (emphasis omitted). Martindale, Griffin, and Curtis show that, without difficulty and in different ways, the point can be made that by choosing arbitration one gives up the "time-honored right to sue." See Garfinkel, 168 N.J. at 135. The waiver-of-rights language must be clear and unambiguous -- that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum. (pp. 15-17)

4. The arbitration agreement in this case states that either party may submit any dispute to "binding arbitration," that "[t]he parties shall agree on a single arbitrator to resolve the dispute," and that the arbitrator's decision "shall be final and may be entered into judgment in any court of competent jurisdiction." The arbitration provision does not explain that plaintiff is waiving her right to seek relief in court, what arbitration is, or how arbitration is different from a proceeding in a court of law. Although an arbitration clause does not have to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is being waived, the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute. After all, "[a]n effective waiver requires a [consumer] to have full knowledge of [her] legal rights" before she relinquishes them. Knorr v. Smeal, 178 N.J. 169, 177 (2003). The Court emphasizes that no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights. Whatever words compose an arbitration agreement, they must be clear and unambiguous that a consumer is choosing to arbitrate disputes rather than resolve them in a court of law. The arbitration agreement here is unenforceable because its wording did not clearly and unambiguously signal to plaintiff that, by entering the agreement, she was surrendering her right to pursue her statutory claims in court. (pp. 17-21)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.**

PATRICIA ATALESE,

    Plaintiff-Appellant,

       v.

U.S. LEGAL SERVICES GROUP,
L.P.,

    Defendant-Respondent.


        Argued April 9, 2014 – Decided September 23, 2014

        On certification to the Superior Court,
        Appellate Division.

        William D. Wright argued the cause for
        appellant.

        Thomas M. Barron argued the cause for
        respondent.

        Jed L. Marcus submitted a brief on behalf of
        amicus curiae Pacific Legal Foundation
        (Bressler, Amery & Ross, attorneys; Mr.
        Marcus and Deborah J. La Fetra, a member of
        the California and Arizona bars, on the
        brief).

    JUSTICE ALBIN delivered the opinion of the Court.

    Arbitration provisions are now commonplace in consumer contracts. Consumers can choose to pursue arbitration and waive their right to sue in court, but should know that they are making that choice. An arbitration clause, like any contractual clause providing for the waiver of a constitutional or statutory

right, must state its purpose clearly and unambiguously. In choosing arbitration, consumers must have a basic understanding that they are giving up their right to seek relief in a judicial forum.

Here, plaintiff, Patricia Atalese, contracted with defendant, U.S. Legal Services Group, L.P. (USLSG), for debt-adjustment services. The contract contained an arbitration provision for the resolution of any dispute between the parties, but the provision made no mention that plaintiff waived her right to seek relief in court. Plaintiff brought a lawsuit against USLSG in the Special Civil Part alleging violations of two consumer-protection statutes.

The trial court granted USLSG's motion to compel arbitration pursuant to the service contract. The Appellate Division affirmed, finding that "the lack of express reference to a waiver of the right to sue in court" did not bar enforcement of the arbitration clause.

We now reverse. The absence of <u>any</u> language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable. An arbitration provision -- like any comparable contractual provision that provides for the surrendering of a constitutional or statutory right -- must be sufficiently clear to a reasonable consumer. The provision here does not pass that

2

test.  We therefore vacate the judgment of the Appellate Division and remand to the Special Civil Part for proceedings consistent with this opinion.

## I.

### A.

This case arises from a civil complaint filed in the Special Civil Part.  Plaintiff alleged that defendant violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18.  She sought treble damages, statutory penalties, and attorney's fees.

The trial court's decision to compel arbitration was based on the pleadings.  See R. 4:46-2(c).  We briefly review those pleadings.

### B.

Plaintiff entered into a service contract with USLSG, which promised to provide debt-adjustment services.  For those services, she paid USLSG approximately $5000, which included $4083.55 in legal fees, $940 in supplemental legal fees, and $107.50 in other fees.  Plaintiff alleged that USLSG misrepresented that the monies were spent on numerous attorneys negotiating with creditors on her behalf.  She maintained that the only work done by an attorney was the preparation of a single one-page answer for a collection action in which she

3

represented herself.  Plaintiff also alleged that USLSG settled only a single debt for her and "knowingly omitted" that it was not a licensed debt adjuster in New Jersey.  Last, plaintiff contended that USLSG violated New Jersey's usury law.

USLSG denied the allegations in the complaint.

C.

USLSG moved to compel arbitration based on an arbitration provision in the twenty-three-page service contract.  The arbitration provision is located on page nine, paragraph sixteen, of the contract and states:

> **Arbitration:**  In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party.  The parties shall agree on a single arbitrator to resolve the dispute.  The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim.  The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county.  Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction.  The conduct of the arbitration shall be subject to the then current rules of the arbitration service.  The costs of arbitration, excluding legal fees, will be split equally or be born by the losing party, as determined by the arbitrator.  The parties shall bear their own legal fees.

4

The trial court granted USLSG's motion to compel arbitration and dismissed the complaint without prejudice. The court found the arbitration clause to be "minimally, barely . . . sufficient to put the [plaintiff] on notice that if [the parties] have any sort of dispute arising out of [the] agreement, it's going to be heard in [a]rbitration." The court also believed that the arbitration clause met the criteria outlined in Curtis v. Cellco Partnership, 413 N.J. Super. 26, 33-37 (App. Div.), certif. denied, 203 N.J. 94 (2010). There, the Appellate Division held that an arbitration provision will be enforced so long as it is "sufficiently clear, unambiguously worded, satisfactorily distinguished from the other [a]greement terms, and . . . provide[s] a consumer with reasonable notice of the requirement to arbitrate." Id. at 33. The trial court concluded that although upholding the arbitration provision was not "a slam dunk," the policy favoring arbitration compelled the outcome.

Plaintiff appealed.

## II.

In an unpublished opinion, the Appellate Division affirmed the trial court's order compelling arbitration, relying heavily on language in Curtis, supra, 413 N.J. Super. at 33, in reaching that conclusion. The panel held that "the lack of express reference to a waiver of the right to sue in court or to

5

arbitration as the 'exclusive' remedy" did not bar enforcement of the arbitration clause. The panel stated that while the arbitration clause "did not explicitly state that plaintiff agreed to waive her right to try her dispute in court, it clearly and unambiguously stated that . . . <u>any</u> dispute relating to the underlying agreement <u>shall</u> be submitted to arbitration and the resolution of that forum shall be <u>binding</u> and <u>final</u>." It noted that other appellate panels had upheld arbitration provisions that did not have explicit waiver-of-rights language. (Citing <u>Griffin v. Burlington Volkswagen, Inc.</u>, 411 <u>N.J. Super.</u> 515, 518 (App. Div. 2010); <u>EPIX Holdings Corp. v. Marsh & McLennan Cos.</u>, 410 <u>N.J. Super.</u> 453, 476 (App. Div. 2009), <u>overruled in part on other grounds by</u> <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 <u>N.J.</u> 174, 192-93 (2013)).

The panel concluded that the language of the arbitration clause gave the "parties reasonable notice of the requirement to arbitrate all claims under the contract," and that "a reasonable person, by signing the agreement, [would have understood] that arbitration is the sole means of resolving contractual disputes."

We granted plaintiff's petition for certification. <u>Atalese v. U.S. Legal Servs. Grp., L.P.</u>, 214 <u>N.J.</u> 117 (2013). We also granted Pacific Legal Foundation's request to participate as amicus curiae, limited to the filing of a brief.

6

III.

A.

Plaintiff contends that the arbitration clause does not comply with New Jersey law, specifically Curtis and our decision in Marchak v. Claridge Commons, Inc., 134 N.J. 275, 281 (1993), because it "does not clearly and unequivocally state its purpose in depriving [plaintiff] of her time-honored right to sue." She asserts that New Jersey courts do not uphold "arbitration provisions that fail to: (1) indicate that the parties waive their right to sue; or (2) indicate that arbitration is the parties' exclusive remedy." Plaintiff does not suggest that an incantation of "magic words" is necessary for a waiver of rights but does assert that the language for such a waiver must be clear and unequivocal.

B.

USLSG contends that the term "arbitration" is universally understood and that "[n]o reasonable consumer could have any doubt that arbitration is different than litigation." USLSG emphasizes that the Federal Arbitration Act (FAA) reflects a "liberal federal policy favoring arbitration" and requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." (Citations and internal quotation marks omitted) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. ___, ___, 131 S. Ct. 1740,

7

1745-46, 179 L. Ed. 2d 742, 751 (2011)).  It argues that the language in Marchak, supra -- that an arbitration "clause depriving a citizen of access to the courts should clearly state its purpose," 134 N.J. at 282 -- as construed by plaintiff, is in conflict with Concepcion and New Jersey case law.  Last, USLSG submits that the arbitration clause is sufficiently clear and "adequately advised" plaintiff that her lawsuit would be resolved "in an arbitral forum."

C.

Pacific Legal Foundation, participating as amicus curiae, urges this Court to affirm the Appellate Division and enforce the arbitration agreement.  Amicus emphasizes that arbitration provisions in contracts must be viewed with favor, consistent with the dictates of federal and state law, and not with "suspicion or hostility."  Amicus maintains that consumers entering into contracts with arbitration clauses are "presumed" to be sufficiently competent to understand what they are signing and that "the law does not require invocation of particular terms of art to create an enforceable arbitration contract."  In short, amicus insists that plaintiff signed an arbitration agreement "written in standard form and simple language" and should be bound by it.

IV.

A.

8

The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration.  Concepcion, supra, 563 U.S. at ___, 131 S. Ct. at 1745, 179 L. Ed. 2d at 751 (describing Section 2 of FAA as reflecting "a 'liberal federal policy favoring arbitration'" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983))); Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006) (noting that Legislature, in enacting New Jersey's Arbitration Act, codified existing judicial policy favoring arbitration as "means of dispute resolution"); Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002) ("[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes.").

Section 2 of the FAA provides that

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> [9 U.S.C.A. § 2.]

The FAA requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to

9

their terms." Concepcion, supra, 563 U.S. at ___, 131 S. Ct. at 1745-46, 179 L. Ed. 2d at 751 (citations omitted). Thus, "a state cannot subject an arbitration agreement to more burdensome requirements than" other contractual provisions. Leodori v. CIGNA Corp., 175 N.J. 293, 302, cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L. Ed. 2d 250 (2003). An arbitration clause cannot be invalidated by state-law "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, supra, 563 U.S. at ___, 131 S. Ct. at 1746, 179 L. Ed. 2d at 751.

Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable. See Hirsch, supra, 215 N.J. at 187 ("[T]he preference for arbitration 'is not without limits.'" (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001))). Section 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses.'" Concepcion, supra, 563 U.S. at ___, 131 S. Ct. at 1746, 179 L. Ed. 2d at 751 (emphasis added) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996)). Accordingly, the FAA "permits states to regulate . . . arbitration agreements under general contract principles," and a court may invalidate an arbitration clause "'upon such grounds as exist at law or in equity for the

10

revocation of any contract.'" Martindale, supra, 173 N.J. at 85 (quoting 9 U.S.C.A. § 2); see First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 993 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); Hojnowski, supra, 187 N.J. at 342 ("[S]tate contract-law principles generally govern a determination whether a valid agreement to arbitrate exists." (citing First Options, supra, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at 993)).

B.

An agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." NAACP of Camden Cnty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div.), certif. granted, 209 N.J. 96 (2011), and appeal dismissed, 213 N.J. 47 (2013). A legally enforceable agreement requires "a meeting of the minds." Morton v. 4 Orchard Land Trust, 180 N.J. 118, 120 (2004). Parties are not required "to arbitrate when they have not agreed to do so." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488, 499 (1989); see Garfinkel, supra, 168 N.J. at 132 ("'[O]nly those issues may be arbitrated which the parties have

11

agreed shall be.'"  (quoting In re Arbitration Between Grover &
Universal Underwriters Ins. Co., 80 N.J. 221, 228 (1979))).

Mutual assent requires that the parties have an
understanding of the terms to which they have agreed.  "An
effective waiver requires a party to have full knowledge of his
legal rights and intent to surrender those rights."  Knorr v.
Smeal, 178 N.J. 169, 177 (2003) (citing W. Jersey Title & Guar.
Co. v. Indus. Trust Co., 27 N.J. 144, 153 (1958)).  "By its very
nature, an agreement to arbitrate involves a waiver of a party's
right to have her claims and defenses litigated in court."
Foulke, supra, 421 N.J. Super. at 425.  But an average member of
the public may not know -- without some explanatory comment --
that arbitration is a substitute for the right to have one's
claim adjudicated in a court of law.

Moreover, because arbitration involves a waiver of the
right to pursue a case in a judicial forum, "courts take
particular care in assuring the knowing assent of both parties
to arbitrate, and a clear mutual understanding of the
ramifications of that assent."  Ibid.

The requirement that a contractual provision be
sufficiently clear to place a consumer on notice that he or she
is waiving a constitutional or statutory right is not specific
to arbitration provisions.  Rather, under New Jersey law, any
contractual "waiver-of-rights provision must reflect that [the

12

party] has agreed clearly and unambiguously" to its terms.
Leodori, supra, 175 N.J. at 302; see, e.g., Dixon v. Rutgers,
the State Univ. of N.J., 110 N.J. 432, 460-61 (1988) (holding
that collective bargaining agreement cannot deprive one of
statutory rights to evidentiary materials in anti-discrimination
case because "[u]nder New Jersey law[,] for a waiver of rights
to be effective it must be plainly expressed"); Red Bank Reg'l
Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J.
122, 140 (1978) (explaining, in public-employment labor-
relations context, that any waiver of statutory right to file
grievances "must be clearly and unmistakably established"); W.
Jersey Title & Guar. Co., supra, 27 N.J. at 152-53 ("It is
requisite to waiver of a legal right that there be a clear,
unequivocal, and decisive act of the party . . . . Waiver
presupposes a full knowledge of the right and an intentional
surrender . . . ." (citations and internal quotation marks
omitted)); Christ Hosp. v. Dep't of Health & Senior Servs., 330
N.J. Super. 55, 63-64 (App. Div. 2000) (requiring "clear and
unmistakable waiver" of statutory right to hearing following
refusal to renew license); Franklin Twp. Bd. of Educ. v.
Quakertown Educ. Ass'n, 274 N.J. Super. 47, 53 (App. Div. 1994)
(holding that waiver of court-ordered, strike-related expenses
must be "clear and unmistakable" (citation and internal
quotation marks omitted)); Otis Elevator Co. v. Stafford, 95

13

N.J.L. 79, 82 (Sup. Ct. 1920) ("Clear and unmistakable evidence is necessary to hold that the right to file a [mechanics'] lien has been waived."); Amir v. D'Agostino, 328 N.J. Super. 141, 160 (Ch. Div. 1998) (holding that waiver of statutory rights under Condominium Act requires that party "kn[ow] that there [i]s a statutory protection available and then elect[] to waive it" because "conduct that purports to constitute a waiver must be clear and unmistakable"), aff'd o.b., 328 N.J. Super. 103, 105 (App. Div. 2000); cf. Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80, 119 S. Ct. 391, 396, 142 L. Ed. 2d 361, 371 (1998) (holding that "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" must be "clear and unmistakable").

Arbitration clauses are not singled out for more burdensome treatment than other waiver-of-rights clauses under state law. Our jurisprudence has stressed that when a contract contains a waiver of rights -- whether in an arbitration or other clause -- the waiver "must be clearly and unmistakably established." Garfinkel, supra, 168 N.J. at 132 (citation and internal quotation marks omitted). Thus, a "clause depriving a citizen of access to the courts should clearly state its purpose." Ibid. (quoting Marchak, supra, 134 N.J. at 282). We have repeatedly stated that "[t]he point is to assure that the parties know that in electing arbitration as the exclusive

14

remedy, they are waiving their time-honored right to sue."
Ibid. (quoting Marchak, supra, 134 N.J. at 282); Hirsch, supra,
215 N.J. at 187 (same).

No particular form of words is necessary to accomplish a
clear and unambiguous waiver of rights.  It is worth
remembering, however, that every "consumer contract" in New
Jersey must "be written in a simple, clear, understandable and
easily readable way."  N.J.S.A. 56:12-2.  Arbitration clauses --
and other contractual clauses -- will pass muster when phrased
in plain language that is understandable to the reasonable
consumer.

Our courts have upheld arbitration clauses phrased in
various ways when those clauses have explained that arbitration
is a waiver of the right to bring suit in a judicial forum.  For
example, in Martindale, supra, we upheld an arbitration clause
because it explained that the plaintiff agreed "to waive [her]
right to a jury trial" and that "all disputes relating to [her]
employment . . . shall be decided by an arbitrator."  173 N.J.
at 81-82, 96 (stating that "arbitration agreement not only was
clear and unambiguous, it was also sufficiently broad to
encompass reasonably plaintiff's statutory causes of action").
In Griffin, supra, the Appellate Division upheld an arbitration
clause, which expressed that "[b]y agreeing to arbitration, the
parties understand and agree that they are waiving their rights

15

to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes." 411 N.J. Super. at 518. In Curtis, supra, the Appellate Division found the arbitration provisions were "sufficiently clear, unambiguously worded, satisfactorily distinguished from the other [a]greement terms, and drawn in suitably broad language to provide a consumer with reasonable notice of the requirement to arbitrate." 413 N.J. Super. at 33. The arbitration agreement in Curtis stated:

> Instead of suing in court, we each agree to settle disputes (except certain small claims) only by arbitration. The rules in arbitration are different. There's no judge or jury, and review is limited, but an arbitrator can award the same damages and relief, and must honor the same limitations stated in the agreement as a court would.

> [Id. at 31 (emphasis omitted).]

Martindale, Griffin, and Curtis show that, without difficulty and in different ways, the point can be made that by choosing arbitration one gives up the "time-honored right to sue." See Garfinkel, supra, 168 N.J. at 135 (declining to "suggest that a party need refer specifically to the [Law Against Discrimination] or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights"). The waiver-of-rights language, however, must be clear and unambiguous -- that is, the parties must know that there is a

16

distinction between resolving a dispute in arbitration and in a judicial forum.

With those principles in mind, we turn to the arbitration provision before us.

V.

Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's or Appellate Division's interpretation. Kieffer v. Best Buy Stores, L.P., 205 N.J. 213, 222-23 (2011). Our approach in construing an arbitration provision of a contract is governed by the same de novo standard of review. Hirsch, supra, 215 N.J. at 186.

The arbitration clause at issue appears on page nine of a twenty-three-page contract between plaintiff and USLSG. Under the terms of the agreement, USLSG promised to provide plaintiff with debt-adjustment services. In her civil complaint, plaintiff alleged that USLSG failed to deliver the services promised, misrepresented that various attorneys were working on her case, and knowingly omitted that it was not a licensed debt adjuster in this State. Plaintiff asserted that USLSG violated two consumer-protection statutes, the CFA and the TCCWNA, both of which explicitly provide remedies in a court of law. See N.J.S.A. 56:8-19 ("Any person who suffers any ascertainable loss . . . may bring an action or assert a counterclaim therefor in

17

any court of competent jurisdiction."); N.J.S.A. 56:12-17 ("A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of [the TCCWNA] and the court in its discretion may void the contract.").

Nowhere in the arbitration clause is there any explanation that plaintiff is waiving her right to seek relief in court for a breach of her statutory rights. The contract states that either party may submit any dispute to "binding arbitration," that "[t]he parties shall agree on a single arbitrator to resolve the dispute," and that the arbitrator's decision "shall be final and may be entered into judgment in any court of competent jurisdiction." The provision does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law. Nor is it written in plain language that would be clear and understandable to the average consumer that she is waiving statutory rights. The clause here has none of the language our courts have found satisfactory in upholding arbitration provisions -- clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief. We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration. But the clause, at

18

least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute.[1]  Mutual assent to an agreement requires mutual understanding of its terms.  After all, "[a]n effective waiver requires a [consumer] to have full knowledge of [her] legal rights" before she relinquishes them. See Knorr, supra, 178 N.J. at 177.

In the employment setting, we have stated that we would "not assume that employees intend to waive [their rights under the Law Against Discrimination] unless their agreements so provide in unambiguous terms."  Garfinkel, supra, 168 N.J. at 135.  We indicated that although a waiver-of-rights provision need not "list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights," employees should at least know that they have "agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination."  Ibid.

We emphasize that no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights.  Whatever words compose an arbitration agreement, they

---

[1] Article I, Paragraph 9 of the 1947 New Jersey Constitution guarantees that "[t]he right of trial by jury shall remain inviolate."  That guarantee has appeared in every New Jersey Constitution.  See N.J. Const. of 1776 art. XXII; N.J. Const. of 1844 art. I, § 7.

19

must be clear and unambiguous that a consumer is choosing to arbitrate disputes rather than have them resolved in a court of law.[2]  In this way, the agreement will assure reasonable notice to the consumer.  To be clear, under our state contract law, we impose no greater burden on an arbitration agreement than on any other agreement waiving constitutional or statutory rights.

In the matter before us, the wording of the service agreement did not clearly and unambiguously signal to plaintiff that she was surrendering her right to pursue her statutory claims in court.  That deficiency renders the arbitration agreement unenforceable.[3]

---

[2] Both plaintiff and USLSG reference EPIX Holdings, supra, 410 N.J. Super. 453, in their briefs.  There, a panel of the Appellate Division enforced an arbitration provision that stated that "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration," and that "the arbitrators would have 'exclusive jurisdiction over the entire matter in dispute, including any question as to arbitrability.'" Id. at 461, 482.  The parties in EPIX Holdings did not challenge whether that language satisfied the standard for a waiver of rights.  We find that the language there is not sufficient to constitute a clear and unambiguous waiver of a consumer's right to sue in court.

[3] Our opinion should not be read to approve that part of the arbitration clause that states: "The costs of arbitration, excluding legal fees, will be split equally or born by the losing party, as determined by the arbitrator.  The parties shall bear their own legal fees."  See Delta Funding Corp. v. Harris, 189 N.J. 28, 44 (2006) (stating that "defendant [] may not limit a consumer's ability to pursue the statutory remedy of attorney's fees and costs when it is available to prevailing parties" and explaining that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in

20

VI.

The judgment of the Appellate Division is reversed. We remand to the trial court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.

---

an arbitral[,] rather than a judicial forum.") (internal quotation marks omitted); see also N.J.S.A. 56:12-16 (stating that under TCCWNA "[n]o consumer contract . . . shall contain any provision by which the consumer waives his rights under this act"); N.J.S.A. 56:8-19 ("In all actions under [the CFA], . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.").

SUPREME COURT OF NEW JERSEY

NO. ___A-64___                          SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

PATRICIA ATALESE,

      Plaintiff-Appellant,

          v.

U.S. LEGAL SERVICES GROUP,
L.P.,

      Defendant-Respondent.

DECIDED _____September 23, 2014_____
_____Chief Justice Rabner_____  PRESIDING
OPINION BY _____Justice Albin_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1