**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0350-20

DARRYL SEELHORST and
JAMES TAWN VIGIE,

     Plaintiffs-Appellants,

v.

IMMUNOMEDICS, INC.,
DEBRA WARNER, and
WILLIAM CONKLING,

     Defendants-Respondents.

_____

Submitted May 12, 2021 – Decided June 7, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1226-20.

Joseph & Kirschenbaum, LLP, attorneys for appellants (Lucas C. Buzzard, on the briefs).

Littler Mendelson, P., attorneys for respondents (Ivan R. Novich and Sandra T. Jimenez, on the brief).

PER CURIAM

Plaintiffs Darryl Seelhorst and James Tawn Vigie appeal from an August 28, 2020 order granting defendants Immunomedics, Inc. (the Company), Debra Warner, and William Conkling's motion to compel arbitration and staying this action while plaintiffs' claims were being arbitrated. We affirm.

The facts relevant to the arbitration provisions are not in dispute. From October 2018 until January 9, 2020, plaintiffs were employed by the Company as oncology account managers or pharmaceutical sales representatives. As a term and condition of their employment, plaintiffs were required to agree to and execute the Company's "Arbitration Policy With Respect To Dispute Resolution and Arbitration" (the Arbitration Agreement). Plaintiffs certified that they "read and understood, and agree[d] to comply with, [the Arbitration Agreement]."

In relevant part, the Arbitration Agreement provides:

> The Company will try and resolve disputes with employees through internal discussions. However, if disputes cannot be resolved, <u>you may submit your claim to the American Arbitration Association ("AAA") for final and binding arbitration</u> under the AAA's Employment Dispute Rules. <u>The Company may also submit any claim it has against you to arbitration.</u> Copies of the AAA's current Rules are available from the Company's Human Resources Department.
>
> > 1) This Arbitration Procedure covers all claims or controversies arising out of your employment or its termination ("Claims"). It covers Claims concerning discipline and discharge, benefits, job

bidding, seniority rights, safety rules, and the interpretation or application of any of the provisions of the Company's Employee Handbook. It covers Claims for wages or other compensation or benefits; Claims for breach of any contract or covenant whether express or implied; tort Claims; Claims for discrimination (including, but not limited to, race, color, sex, sexual orientation or preference, religion, national origin, age, marital status, handicap or disability, veteran or citizenship status); Claims of sexual harassment; and Claims for violation of any federal, state, or local government constitution, law, statute, regulation, or ordinance.

. . . .

3) A written arbitration demand must be made no later than ninety (90) calendar days after the Claim arises, unless a longer period is otherwise provided by law, or it will be conclusively resolved against the claiming party.

. . . .

7) The arbitrator shall issue a written award and an opinion explaining the award. The arbitrator's decision shall be final, binding, and subject to review only pursuant to the Federal Arbitration Act or comparable state law.

. . . .

9) <u>This Arbitration Procedure bars litigation in any court by either the Company or you of any Claim that should be arbitrated under the Procedure.</u> However, you and the Company have

> the right to move in court to compel arbitration or to confirm and enforce an arbitrator's award under this Arbitration Procedure.
>
> In the event that any court determines for any reason that this Arbitration Procedure is not binding, or otherwise allows any litigation regarding a Claim covered by this Arbitration Procedure to go forward, the Company and you agree that (i) the court proceeding must be commenced no later than six (6) months after the court makes such a determination, unless a longer period is otherwise provided by law; and (ii) all rights to a trial by jury in the litigation are expressly waived.
>
> [(Emphasis added).]

On January 9, 2020, the Company terminated plaintiffs' employment. Five months later, plaintiffs filed a two-count complaint alleging: (1) defendants retaliated and wrongfully discharged them for complaining about allegedly unlawful Company practices, in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14 (count one); and (2) the Company fraudulently induced plaintiffs to enter into employment agreements and continue their employment with the Company by misrepresenting the state of its business, its ability to meet sales targets, and plaintiffs' compensation (count two).

In lieu of filing an answer, defendants moved to compel arbitration in accordance with the Arbitration Agreement and to dismiss count two as time-

4

barred under a provision of the Arbitration Agreement. The Company argued that plaintiffs entered into the Arbitration Agreement and their claims were encompassed by its broad provisions, which specifically included CEPA claims. The Company asserted that "no magic words are required" to create an enforceable agreement to arbitrate employee disputes and claims. Relying on the "strong public policy in favor of arbitration[,]" the Company stated that "reasonable doubts . . . should be resolved in favor of arbitration." The Company contended that the use of the word "may" did not make the Arbitration Agreement permissive, because such an interpretation is "inconsistent with the other language in the agreement . . . ."

Plaintiffs opposed the motion, contending the Arbitration Agreement Policy gave each party a permissive right to elect arbitration but did not mandate arbitration of plaintiffs' claims as the exclusive means of dispute resolution and that count two was not time-barred. Plaintiffs argued that the operative language of the Arbitration Agreement was permissive, stating that if disputes with employees could not be resolved "through internal discussions" employees "may submit [their] claim to the [AAA] for final and binding arbitration under the AAA's Employment Dispute Rules." Plaintiffs contended that because the Arbitration Agreement did not state that "the employee must submit his claim

A-0350-20

to arbitration," they did not clearly and unambiguously waive their right to litigate their claims in court. They further argued that the operative language was conditional and ambiguous and that any ambiguity in the Arbitration Agreement should resolved against the Company, which drafted it.

On August 28, 2020, the court issued an order and written statement of reasons granting defendants' motion to compel arbitration and staying the action while plaintiffs' claims were being arbitrated. The court rejected plaintiffs' argument that arbitration is not compulsory, stating:

> In view of New Jersey's strong public policy favoring arbitration, and notwithstanding the inartful use of the term "may," [the] court finds that the clear intent of the parties was to arbitrate all claims arising from or related to [p]laintiffs' employment. Claims subject to arbitration comprise claims for violation of any federal, state or local law or statute, which would include CEPA claims. Aside from [d]efendants' argument as to how the "may" provision should be interpreted, the court's conclusion requiring the parties' intent for obligatory arbitration is confirmed by the first numbered paragraph stating, "This Arbitration Procedure covers all claims or controversies arising out of your employment or its termination" and the ninth numbered paragraph that provides, "this Arbitration Procedure bars litigation in any court by either the Company or you of any Claim that should be arbitrated under the Procedure."
>
> Considering the strong public policy favoring "arbitration as a means of dispute resolution" and requiring "liberal construction of contracts in favor of

arbitration," [Young v. Prudential Ins. Co. of Am., 297 N.J. Super. 605, 617 (App. Div. 1997)], any potential dispute about what was intended by the term "may" is dispositively resolved by the subsequent provisions of the Agreement that make clear that arbitration procedures bar litigation of claims relating to [p]laintiffs' employment in any court. Therefore, [d]efendants' motion to dismiss [p]laintiffs' complaint is granted. The parties shall attend arbitration in accordance with the Agreement.

The court also concluded it was precluded from determining whether the fraudulent inducement claim (count two) was time-barred because the scope of its review was "limited to determining: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) if the arbitration agreement encompasses the dispute or claims at issue." This appeal followed.

Plaintiffs raise the following points for our consideration:

A. STANDARD OF REVIEW & GENERAL PRINCIPLES GOVERNING THE INTERPRETATION OF ARBITRATION AGREEMENTS UNDER NEW JERSEY LAW.

B. THE PLAIN LANGUAGE OF THE ARBITRATION AGREEMENT PERMITS (BUT DOES NOT REQUIRE) EACH PARTY TO SELECT ARBITRATION TO RESOLVE ITS OWN CLAIMS AND TO HAVE THAT SELECTION ENFORCED.

1. The plain language of the opening paragraph is permissive – it permits (but does not require) each party to select arbitration as the forum for resolving its own claims.

7

2. Paragraphs One and Nine of the Agreement do not mandate the arbitration of all disputes between the parties or permit the Company to compel the arbitration of Plaintiffs' own claims; instead, these paragraphs allow the claiming party to enforce its selection of arbitration as the forum for resolving its own claims.

C. ANY AMBIGUITY IN THE ARBITRATION AGREEMENT MUST BE CONSTRUED AGAINST IMMUNOMEDICS AS THE DRAFTER.

Appellate courts "apply a de novo standard of review when determining the enforceability of contracts, including arbitration agreements." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). "The enforceability of arbitration provisions is a question of law . . . ." Ibid. (citing Morgan v. Sandford Brown Inst., 225 N.J. 289, 303 (2016)). Reviewing courts do not defer to a trial court's interpretative analysis. Morgan, 225 N.J. at 303 (citing Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014)). "We therefore construe the arbitration provision with fresh eyes." Ibid. (citing Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

"The Federal Arbitration Act (FAA), 9 [U.S.C.] §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citing

AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). "[O]ur jurisprudence has recognized arbitration as a favored method for resolving disputes." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001). We therefore review orders compelling or denying arbitration "mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch, 215 N.J. at 186.

Under the FAA, arbitration is a creature of contract. 9 U.S.C. § 2; Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); see also Hirsch, 215 N.J. at 187 (explaining that under New Jersey law, arbitration is also a creature of contract). "Accordingly, the FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (alteration in original) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

In determining whether a matter should be submitted to arbitration, a court must evaluate (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute falls within the scope of the agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Martindale, 173 N.J. at 92. The agreement to arbitrate may include a waiver of statutory remedies in

favor of arbitration, <u>Garfinkel</u>, 168 N.J. at 131, including claims arising under CEPA. <u>Young</u>, 297 N.J. Super. at 619.

Plaintiffs do not dispute that the provisions of the Arbitration Agreement are valid and enforceable. They were the product of mutual assent and clearly state that the parties were giving up their right to pursue claims in court and, instead, agreed to arbitrate those claims before an arbitrator, if either party elected to pursue arbitration. <u>See</u> <u>Atalese</u>, 219 N.J. at 442 ("An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" (quoting <u>NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.</u>, 421 N.J. Super. 404, 424 (App. Div. 2011)).

The Arbitration Agreement provides that either the employee or the Company "may" submit an employee's claim "to the [AAA] for final and binding arbitration . . . ." It further provides that the "Arbitration Procedure bars litigation in any court by either the Company or you of any Claim that should be arbitrated under the Procedure." "[N]o prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights." <u>Atalese</u>, 219 N.J. at 447. Here, the use of "may" and "should" does not create an inconsistency or ambiguity.

10

The "intent expressed or apparent in the writing . . . controls" the interpretation of an arbitration agreement. Garfinkel, 168 N.J. at 135. The clear and unmistakable intent of the Arbitration Agreement is to allow either the employee or the Company to submit any unresolved employee disputes and claims to the AAA for final and binding arbitration, including any "tort [c]laims" and any "[c]laims for violation of any federal, state, or local government constitution, law, statute, regulation, or ordinance." Plaintiffs' claims fell within the scope of the Arbitration Agreement. The Company elected to submit plaintiffs' claims to the AAA for binding and enforceable arbitration. That election is enforceable. The trial court correctly granted defendants' motion to compel arbitration in accordance with the Arbitration Agreement.

Our interpretation gives full effect to the entire agreement. See Sonitrol Holding Co. v. Marceau Investissements, 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless."). In contrast, plaintiffs' interpretation of the Arbitration Agreement would render much of it meaningless.

The FAA provides that a party may request a stay if a court action has been commenced and the action involves "any issue referable to arbitration

under an agreement in writing for such arbitration." 9 U.S.C. § 3. The Company did just that. The trial court properly stayed the action pending arbitration and retained jurisdiction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0350-20